IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBIN T., | : | CIVIL ACTION NO. |
| | : | 1:21-CV-1391-JPB-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | : | **FINAL REPORT AND RECOMMENDATION ON AN APPEAL FROM A SOCIAL SECURITY** |
| | : | |
| Defendant. | : | **DISABILITY ACTION** |

Plaintiff Robin T. ("Plaintiff" or "Claimant") is a 56-year-old female seeking Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied Plaintiff's claims for benefits. Plaintiff alleges disability on the basis of repetitive stress disorder/overuse syndrome – Carpal Tunnel; arthritis of the knees and hips; and degenerative disc disease – disc herniation of the lower back. *See* Record [9] ("R.") at 175.

Plaintiff applied for SSI on March 2, 2018, alleging an onset date of disability of March 11, 2016. R. at 158. These claims were initially denied on August 30, 2018 and were denied again upon reconsideration on January 23, 2019. R. 88, 96. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ

Kelly Humphrey held a hearing on November 4, 2019. R. at 36. On December 18, 2019, ALJ Humphrey found that Plaintiff was not disabled. R. at 32. On February 3, 2021, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision final. R. at 1. Plaintiff then filed this action on April 7, 2021.

The action is now before the Court on Plaintiff's "Memorandum of Law in Support of a Social Security Appeal" [13] ("Motion") and is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, based on the administrative record and the briefs of the parties, the undersigned **RECOMMENDS** that Plaintiff's Motion [13] be **DENIED**.

I.  **STANDARD FOR DETERMINING DISABILITY**

An individual is "disabled" for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Any impairments must result from anatomical, psychological, or physiological abnormalities demonstrated by medically accepted clinical or laboratory diagnostic techniques, and must prevent the claimant from substantial gainful work. 42 U.S.C. §§ 423(d)(2)-(3).

The Claimant and the Commissioner share the burden of proof. The Claimant bears the initial burden of establishing a "disability" by demonstrating that she

cannot perform her former type of work. Once the Claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience and impairment, the claimant can perform other jobs. The Claimant bears the ultimate burden to prove that she cannot engage in any substantial gainful activity. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

> The Commissioner must use a five-step sequential analysis:
>
> (1)   Is Claimant currently working? If so, the claim is denied.
>
> (2)   Is the claimed impairment severe; that is, does the impairment or combination of impairments significantly limit the individual's physical or mental ability to do basic work activities? If not, the claim is denied.
>
> (3)   Does the impairment equal or exceed in severity certain impairments described in the impairment listings in the regulations? If so, Claimant is automatically entitled to disability benefits.
>
> (4)   Does Claimant have sufficient residual functional capacity to perform past work? If so, the claim is denied.
>
> (5)   Considering Claimant's age, education, work experience, and residual functional capacity, can Claimant perform any other gainful and substantial work? If so, the claim is denied.

*See* 20 C.F.R. §§ 416.920-416.976.

In this case, the Commissioner, adopting the findings of the ALJ, made the decision to deny disability benefits at step four, finding that Plaintiff has the capacity to perform past relevant work as a waiter. R. at 30.

## II.     FINDINGS OF THE ALJ

The ALJ made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity (SGA) since March 2, 2018, the application date . . . .

2. The claimant has the following severe impairments: osteoarthritis, degenerative disc disease, and obesity . . . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is able to perform work that requires no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. She is able to perform work that requires frequent, but not constant, handling and fingering with the bilateral upper extremities. The claimant is able to tolerate occasional exposure to extreme cold and hazards, such as high exposed places and moving mechanical parts. . . .

5. The claimant is capable of performing past relevant work as a waiter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity . . . .

6. The claimant has not been under a disability, as defined in the Social Security Act, since March 2, 2018, the date the application was filed.

R. at 24-31 (internal citations omitted).

## III. SCOPE OF JUDICIAL REVIEW

The scope of this Court's review is limited. The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The Court may only determine whether substantial evidence supports the Commissioner's findings, and whether he or she applied proper legal standards. The Commissioner's findings are otherwise conclusive. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Biestek*, 139 S. Ct. at 1154; *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. *Walker*, 826 F.2d at 999.

## IV. DISCUSSION

Plaintiff's sole claim for review is that the ALJ erred in weighing the opinion of consulting examiner Alicia Cain, M.D. Dr. Cain examined Plaintiff on May 29, 2019, and concluded that Plaintiff has or "may have" certain difficulties with exertional activities such as lifting, carrying, standing and walking, along with other unspecified "environmental restrictions," due to chronic musculoskeletal pain and other conditions. R. at 254. The ALJ discussed Dr. Cain's opinion but found it to be not persuasive, because "[h]er opinions provide no function by function analysis, and they are imprecise. They are not based on imaging studies as the claimant never presented for scheduled appointments, and they are inconsistent with her indication that the claimant had a normal gait." R. at 29. Plaintiff argues that the ALJ erred in rendering this analysis.

### A. *General Standards for Determining Disability*

The ALJ must evaluate the medical evidence and other evidence in the record to determine the plaintiff's RFC, which is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see also* 20 C.F.R. § 416.945(a)(1) ("Your residual functional capacity is the most you can still

6

do despite your limitations."). Social Security Ruling ("SSR") 96-8p[1] describes an ALJ's obligation to evaluate a claimant's RFC at step four and step five as the "identification of the individual's functional limitations and restrictions and [the] assessment of his or her remaining capacities for work-related activities." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *2 (July 2, 1996).

To determine whether the claimant retains the RFC to perform past relevant work, or whether there is any other work the claimant can perform, the ALJ must express the claimant's RFC in terms of an exertional category, and the ALJ must assess the claimant's capacity to perform each of the exertional and nonexertional functions required at a given category in order to decide whether the claimant is capable of doing the full range or a reduced range of the work contemplated at that level. *See* SSR 96-8p at *3. SSR 96-8p cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions." *Id.* at *4.

---

[1] Although Social Security Rulings issued by the Commissioner of Social Security to clarify implementing regulations and agency policies do not have the force of law, reviewing courts do and should defer to the agency's interpretation of its own regulations, unless the interpretation is inconsistent with statutes or regulations. *Holohan v. Massanari*, 246 F.3d 1199, 1202 n.1 (9th Cir. 2001); *see also Raniolo v. Comm'r of Soc. Sec.*, 464 F. App'x 836, 837 (11th Cir. 2012).

"Exertional capacity" measures a claimant's physical strength across seven functions, such as standing, lifting, and pulling. *Id.* at *5. "Nonexertional capacity" measures a claimant's physical abilities not related to strength, such as posture and manipulation, as well as a claimant's mental abilities, such as understanding, memory, and responding appropriately to supervision and co-workers. *Id.* at *6. SSR 96-8p provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion" concerning the claimant's ability to perform these sustained work activities. *Id.* at *7. In addition, "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record" including medical history, reports of daily activities, medical source statements, and the effects of symptoms, including pain. *Id.* at *5 (emphasis in original).

Furthermore, in assessing a claimant's RFC, an ALJ must "consider the limiting effects of all . . . impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). *See also Walker*, 826 F.2d at 1001 (reversal required because ALJ's RFC finding made no reference to claimant's self-reported complaints of arthralgias, phlebitis, hypertension, gastrointestinal problems and asthma, even though the ALJ did not find any of these to constitute severe limiting conditions). Determining a claimant's RFC is not the same as determining whether a claimant is "disabled" for purposes of eligibility for benefits, but rather is used as a basis for assessing what

type of work, if any, the claimant remains able to do despite his or her impairments. 20 C.F.R. § 416.945(a).

In addition to considering all the claimant's impairments, both severe and non-severe, in making the RFC assessment, the ALJ must also provide a narrative section in the written opinion that describes how he or she arrived at the RFC assessment, including a description—supported by facts—of how the evidence in the record supports each conclusion. *See* SSR 96-8p at *3 ("without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level"); *see also Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 n.27 (E.D. Wis. 2004) ("When assessing physical RFC, the requirement is simple: the ALJ must first determine the claimant's ability to sit, stand, walk, lift, carry, push and pull before assigning an exertional category, *e.g.*, sedentary, light, medium, heavy.") (citing *Gotz v. Barnhart*, 207 F. Supp. 2d 886, 896 (E.D. Wis. 2002) (citing SSR 96-8p))).

The regulations require the ALJ to evaluate the opinions from medical sources in the record. For claims filed before March 27, 2017, "medical opinions" broadly included "statements from acceptable medical sources that reflect judgments about

the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). The ALJ was required to assign a specific quantum of weight to probative medical opinions based on a hierarchy of medical evidence. *See Sharfaz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987); 20 C.F.R. § 416.927. The opinions of treating physicians were to receive the most deference, followed by that of examining physicians, then that of non-examining physicians, and finally, evidence from other medical sources. *See Hill v. Barnhart*, No. 1:06-CV-0133-BBM-RGV, 2007 WL 438161, at *11 (N.D. Ga. Jan. 16, 2007), *report & rec. adopted*, (N.D. Ga. Feb. 6, 2007). The regulations required the ALJ to grant the opinions of treating physicians substantial or considerable weight and to articulate good cause when they departed from doing so. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

For claims filed on or after March 27, 2017, however, such as the claim in this case, the Social Security Administration significantly amended the relevant regulations. The "medical opinions" an ALJ must evaluate now include only "statement[s] from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more" listed impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). Regarding the ALJ's consideration of opinions from medical sources, the regulations no longer require an

10

ALJ to assign a specific weight to the medical opinions based on a formal hierarchy of evidence. Instead, an ALJ must evaluate the persuasiveness of all medical opinions and prior administrative findings based on the same five factors: (1) their supportability based on their underlying objective evidence; (2) their consistency with other evidence; (3) the relationship of the claimant with the source; (4) the specialization of the source; and (5) other factors, including the familiarity of the source with the "disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The first two of these factors, supportability and consistency, are the most important to the ALJ's analysis. 20 C.F.R. § 416.920c(a). The ALJ must discuss these two factors and may, but is not required to, discuss the latter three factors unless multiple medical opinions on the same issue are both well-supported and consistent with the record but otherwise "are not exactly the same." 20 C.F.R. § 416.920c(b)(2)-(3). Evaluation of the third factor, the claimant's relationship with the source, is guided by five subfactors: (1) the length of the treatment relationship; (2) the frequency of any examinations; (3) the purpose of the treatment relationship; (4) the extent of the treatment relationship; and (5) whether the claimant and the source have an examining relationship. *Id.* at § 416.920c(c)(3)(i)-(v).

Although the Eleventh Circuit has held that the ALJ need not specifically refer to every piece of evidence in the record, *Dyer v. Barnhart*, 395 F.3d 1206, 1211

(11th Cir. 2005), the ALJ must explain the weight afforded to "obviously probative exhibits." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Nevertheless, although an ALJ is required to consider the opinions of medical sources, the opinion of any physician or other medical source is not determinative regarding a claimant's residual functional capacity because the ALJ bears the ultimate responsibility for assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1545(a)(3), 404.1546(c); *Beegle v. Soc. Sec. Admin. Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor[.]"); *Lewis*, 125 F.3d at 1440 ("we note that we are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition"); *see also Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) ("an opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner"); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors.").

B. *Consideration and Discussion of Dr. Cain's Opinion*

Applying these standards, the Court cannot find any error in the ALJ's consideration or discussion of Dr. Cain's opinion. The ALJ articulated valid grounds, that enjoyed adequate substantiation in the record, for finding the opinion to be unsupported and thereby unpersuasive.

First, the ALJ was plainly entitled to find that Dr. Cain's statements were at most "vague" and "imprecise." R. at 29. The only limitation Dr. Cain appeared to actually identify with any degree of likelihood was that Plaintiff would have some unexplained amount of "difficulty" handling objects. R. at 254. Otherwise, Dr. Cain simply hypothecated that Plaintiff "may have" some "difficulty" (or in the case of sitting, "little difficulty") with other tasks, such as lifting, carrying, prolonged standing or walking. Not only is the use of the unexplained word "difficulty" inherently imprecise, but the use of the qualifier that Plaintiff only "may" have any of these "difficulties" at all renders the opinion fundamentally equivocal at best. The ALJ was entitled to find this language to be unpersuasive. *See Trina v. Saul*, No. 6:19-CV-435-SI, 2021 WL 1181168, *9 (D. Or. March 29, 2021) ("Indeed, an ALJ need only explain reasons for rejecting 'significant probative evidence.' Some courts have suggested that 'equivocal' statements are not 'significant probative evidence.'") (internal citations omitted); *Dykes v. Berryhill*, No. C16-5649-MAT, 2017 WL 5625994, *7 (W.D. Wash., Nov. 22 2017) (ALJ reasonably rejected a medical

13

source's opinion as speculative and couched in equivocal terms, given the use of qualifying terms in the functional analysis, such as "seems to be able," "seems fairly limited," "appears to depend," and "does not seem," etc.); *Moon v. Astrue*, No. 5:11-CV-2536-AKK, 2012 WL 3854460, at *7 (N.D. Ala. Aug. 31, 2012) (where physician stated that claimant "may need" special supervision at work, ALJ did not err in failing to including that possible limitation in the RFC, which the court described as not "obligatory").

Similarly, the ALJ was entitled to find that the Cain opinion failed to provide any useful function-by-function analysis. Although the opinion referenced specific functions, such as standing and lifting, the opinion did not explain any degree of difficulty on a function-by-function basis, or contain any explanation of what functions Plaintiff could still perform despite all limitations. Rather, the opinion simply conclusorily stated that Plaintiff would—or "may"—have "difficulty" to some unknown extent as to these various functions. The ALJ was entitled to find such a statement to be less than probative.

The ALJ was also entitled to find the opinion to be unsupported, when the text of the opinion itself stated that "[Plaintiff] was a [n]o show for requested studies[.]" R. at 254. In other words, Dr. Cain specifically asked Plaintiff to appear for imaging or other studies to further evaluate Plaintiff's condition, and Plaintiff was a "no show." The ALJ was entitled to infer that Dr. Cain inherently lacked the data that

14

Dr. Cain herself had indicated would be necessary to complete the examination, and to thereby treat Dr. Cain's subsequent references to Plaintiff's possible "difficulties," equivocal as they were, as unsupported.

Plaintiff argues that the ALJ, instead of rejecting the Cain opinion as unpersuasive, should have first re-contacted Dr. Cain and requested that she resolve any ambiguities or lack of precision in her opinion. In some situations, the ALJ is required to re-contact a consultative examiner. Specifically, the regulations provide that "[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b). The ALJ, however, did not violate this duty here.

First, there is no alleged incompleteness or ambiguity in any of the examination results supplied by Dr. Cain, which constitute the significant majority of her report. The issue raised by Plaintiff is with Dr. Cain's brief opinion statements at the conclusion of her report. But the regulations provide that "the absence of a medical *opinion* in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6) (emphasis added).

Second, with regard to Plaintiff being a "no show" for the requested imaging studies, there was no missing information to be supplied by Dr. Cain. The ALJ's

15

whole point was that Dr. Cain entirely lacked such data, despite obviously deeming it to be material to the examination, because Plaintiff was a "no show." This was not an issue that Dr. Cain could be expected to better clarify or explain because Dr. Cain simply was denied the data by Plaintiff's failure to appear.

Third, Dr. Cain's inability to predict anything more than that Plaintiff "may" have certain difficulties was also not necessarily an incompleteness or inadequacy. Indeed, as noted above, courts often treat such equivocal, hypothetical statements as not even constituting significant or probative evidence requiring discussion at all. *See e.g., Trina*, 2021 WL 1181168, *9.

More broadly, the ALJ was also entitled to treat this statement as reflecting Dr. Cain's best attempt at a prognosis, based on the limited medical evidence in front of her, including a lack of requested imaging study results. In other words, that Dr. Cain could not predict that Plaintiff would experience difficulties with any greater degree of certainty was not necessarily an incompleteness in Dr. Cain's analysis, as opposed to a reflection of the weak nature of the medical evidence in front of Dr. Cain. Or at least the ALJ, as factfinder, was entitled to conclude that. *See Trina*, 2021 WL 1181168, at *9 ("[The medical source's] equivocal statement did not create an ambiguity that required clarification by the ALJ or further development of the record").

To the extent the only flaw in Dr. Cain's report was the failure to express her

opinions in a more specific function-by-function analysis, that would present a closer call as to whether clarification should have been sought under 20 C.F.R. § 416.919p(b). On the one hand, unlike the other flaws discussed above, the failure to express an opinion in terms of specific function-by-function limitations would seem to be the sort of lazy imprecision that a consultant already being paid by the Social Security Administration could be expected to go back and fix. On the other hand, there remains a legal question as to whether such an opinion by a mere consultant needs to be clarified at all. As noted above, the applicable regulation states, in the case of a mere *consultative* examination, that an opinion itself is not even necessary to constitute a completed examination report. 20 C.F.R. § 416.919n(c)(6). Thus, the Commissioner seems to argue, if a consultative report need not include any opinion statement at all to be considered "complete" or adequate, it follows that there is no legal obligation to seek clarification of an opinion that may be unnecessarily offered.

In the end, it is unnecessary to resolve that legal question because, even if a duty existed to clarify the function-by-function analysis, any failure to do so here was at most be harmless. As explained above, the ALJ articulated several other clearly reasonable grounds not requiring clarification as to why Dr. Cain's opinion was unpersuasive. There is no basis to remand on this record.

## V.   RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**. **IT IS FURTHER RECOMMENDED** that judgment be entered in favor of Defendant.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 24th day of June, 2022.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE